# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

**DJUAN DONTIZE LE BOURGEOIS**,
      Plaintiff,

v.                                                  Case No. 17-C-1375

**INSTITUTION CORRECTIONAL
OFFICER WOLF,
SERGEANT PRICE,
LIEUTENANT LARSON,
WARDEN WILLIAM POLLARD, and
SECRETARY EDWARD WALL,**
      Defendants.

_____

## ORDER

Plaintiff Djuan Dontize Le Bourgeois is a *pro se* prisoner at Waupun Correctional Institution. He filed a complaint under 42 U.S.C. § 1983 alleging that defendants violated his First, Fourth, Fourteenth, and Fifth Amendment rights when they searched his cell, seized his property including a religious book, and destroyed it in retaliation for his not incriminating himself. (Docket No. 1.) The plaintiff also filed a motion to proceed without prepayment of the filing fee (*in forma pauperis*). (Docket No. 2.) This order resolves plaintiff's motion and screens his complaint.

Plaintiff has been assessed and paid an initial partial filing fee of $6.93. *See* 28 U.S.C. § 1915(b)(1). Therefore, I will grant his motion to proceed without prepayment of the filing fee.

Turning to plaintiff's complaint, I am required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail

to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a cognizable claim under the federal notice pleading system, plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when [] plaintiff pleads factual content that allows the court to draw the reasonable inference that [] defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, I follow the principles set forth in *Twombly* by, first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was caused by defendants acting under the color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). I am obliged to give plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## I. COMPLAINT'S ALLEGATIONS

Plaintiff alleges the following facts. On June 5, 2015, he and his cellmate were placed in a holding cell by defendants Sergeant Price and Institutional Correctional Officer Wolf while Price and Wolf searched their cell. After the search, plaintiff and his cellmate were called to the "front" to talk with Price and Wolf. Docket No. 1 ¶ 10. When they arrived, they saw several items that had been taken from their cell including the following that belonged to plaintiff: magazines, two books (one of which was a religious book), a fan, a foot tub, a mirror, hobby supplies, two boxes of sugar, and a pair of headphones.

Price and Wolf began questioning plaintiff and his cellmate about whether they were making "Hooch."[1] Docket No. 1 ¶ 12. Specifically, Price asked plaintiff about a ziplock bag found in plaintiff's snack bag that contained dough. Plaintiff stated that he had never seen the ziplock bag of dough before. Price then stated,

> Just admit that you were going to make hooch. I can't write you a major conduct report, because you don't have any hooch, even if

---

[1] "Hooch" is a "type of prison alcohol." *Mayoral v. Sheahan*, 245 F.3d 934, 936 (7th Cir. 2001); *see also McKinnie v. Heisz*, No. 09-CV-188-BBC, 2010 WL 898619, at *2 (W.D. Wis. Mar. 10, 2010) (hooch is a homemade intoxicant).

> you admit it. But I can write you a minor and make it look like you were trying to make hooch. But if you tell me you were, I won't write you a conduct report at all. And even if you do tell me you were, I still cannot write you a conduct report, because there is no one to verify my statement.

Docket No. 1 ¶ 17. Plaintiff denied the accusation.

Wolf questioned plaintiff and his cellmate about the property on the table. Plaintiff stated which items were his. Only plaintiff's mirror was returned to him without its scratch resistant covering. Price told plaintiff that "he could not prove [plaintiff] was making hooch, but that he could make it look like it, and unless [] plaintiff was willing to comply with his wishes and just admit to manufacturing hooch, [Price] would hereby destroy [] plaintiff's property." Docket No. 1 ¶ 22. Plaintiff did not comply.

Plaintiff requested a property slip from Price for the items that had been seized from his cell. Price denied the request.

Wolf resumed questioning plaintiff about the items. Wolf insinuated that both plaintiff and his cellmate were making hooch. Wolf told plaintiff that plaintiff had to either admit to making hooch or plaintiff would receive a conduct report. Plaintiff denied the allegation. Wolf then stated, "I'm going to make it look like you were making hooch." Docket No. 1 ¶ 43. Plaintiff and his cellmate were sent back to their cell.

On June 6, 2015, right before dinner, plaintiff again asked Price for a property slip for his items. Price responded no.

While in route to the "chow hall," plaintiff saw defendant Lieutenant Larson and asked what was going on with his property. Docket No. 1 ¶ 47. Larson informed plaintiff that he would talk with Price about it.

Later when plaintiff saw Larson again, Larson said he has spoken to Price. He stated that plaintiff would have to tell Price what he wanted to hear. Otherwise, plaintiff

4

would get a conduct report, Larson would find him guilty, and Larson would destroy plaintiff's property.

When plaintiff saw Price later that day, Price asked plaintiff if there was something plaintiff wanted to tell him. Plaintiff responded no and returned to his cell.

After 9:00 p.m., an officer appeared at plaintiff's cell and asked him to provide a statement for the conduct report. The officer listened to plaintiff, but did not write all of plaintiff's statement.

On June 7, 2015, plaintiff received a disposition regarding his conduct report. His property was deemed contraband and destroyed, and plaintiff received a loss of 60-days recreation.

Plaintiff alleges that defendant William Pollard erroneously failed to take disciplinary actions regarding the seizure of his property as well as overturn the disposition allowing for his property to be destroyed.

Plaintiff seeks injunctive relief and compensatory and punitive damages.

## II. DISCUSSION

Plaintiff asserts that Price and Wolf violated his Fourth Amendment rights by seizing his property and that Price, Wolf, Larson, and Pollard violated his Fourteenth Amendment rights by taking his property and destroying it without due process. Plaintiff further alleges that these defendants violated his First Amendment rights by confiscating his religious materials and retaliating against him for not incriminating himself. Plaintiff also alleges state law claims against Price, Wolf, and Larson for destruction of property, deprivation of religious practices, unequal treatment, retaliation, unreasonable seizure, and negligence. I will discuss each claim in turn, after first addressing plaintiff's claims against defendants Edward Wall and Pollard.

"An individual cannot be held liable in a § 1983 action unless he caused or participated in [the] alleged constitutional deprivation." *Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996) (citations omitted); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible."). There is no supervisory liability, collective liability or vicarious liability under 42 U.S.C. § 1983. *See Pacelli v. deVito*, 972 F.2d 871, 877 (7th Cir. 1992). In other words, there is no liability unless the defendant is personally involved in the violation of plaintiff's rights. *See Morfin v. City of East Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003).

Further, a defendant cannot generally be held liable under section 1983 simply because he had knowledge of another's past misconduct. *Ashcroft*, 555 U.S. at 677. A defendant must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir.2012) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir.1988)). In fact, even the indirect approval of a subordinate officer's actions by his superior would not in itself establish the superior's liability absent participation in the actual constitutional wrongdoing. *Cygnar v. City of Chicago*, 865 F.2d 827, 847 (7th Cir.1989). A causal connection or an affirmative link between the misconduct complained of and the official sued is necessary. *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983).

Here, I find that plaintiff has not alleged a constitutional violation claim against Wall or Pollard. Specifically, Wall cannot be liable under section 1983 merely because of his position as secretary. Although plaintiff names him in the caption of his complaint, plaintiff does not state what Wall did, or what he failed to do, to violate plaintiff's rights.

Plaintiff does assert that Pollard violated his constitutional rights by failing to take disciplinary actions regarding the seizure of his property and for not overturning the conduct report disposition that allowed for the destruction of plaintiff's property. However, plaintiff does not allege that Pollard was even aware of the alleged wrongful acts of Price, Wolf, and Larson that lead to the conduct report and outcome. Thus, Pollard had no personal involvement in those violations and cannot be liable under section 1983 for affirming the conduct report disposition. *See Soderbeck v. Burnett Cty., Wis.,* 752 F.2d 285, 293 (7th Cir. 1985) ("Failure to take corrective action cannot in and of itself violate § 1983.").

Plaintiff has, therefore, failed to allege a claim against Wall and Pollard, and I will dismiss them as defendants.

### A. Fourth Amendment Seizure Claims

Turning to plaintiff's Fourth Amendment claims, prisoners do not have a right against unreasonable searches and seizures of their property. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). In fact, "unfettered access" to cells by prison officials is imperative and does not violate the Fourth Amendment. *Id.* at 527. Thus plaintiff may not proceed on his claims of a Fourth Amendment violation.

### B. Plaintiff's Fourteenth Amendment Due Process Claim

With regard to plaintiff's Fourteenth Amendment claims, the due process clause provides that a person cannot be deprived of his substantive rights to life, liberty, and property without "constitutionally adequate procedures." *Germano v. Winnebago County*, 403 F.3d 926, 928 (7th Cir. 2005) (citation omitted). "In the prison disciplinary context, due process requires only that the prisoner receive advance written notice of the charges, an opportunity to present testimony and documentary evidence *to an*

7

*impartial decision-maker*, and a written explanation for the discipline that is supported by 'some evidence' in the record." *Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003) (citations omitted) (emphasis added) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974)).

Plaintiff asserts that before the conduct report was even filed and so before he had provided his statement regarding the allegation that he was making hooch, Larson had prejudged plaintiff's guilt. Thus, I find plaintiff may proceed on his due process claim against Larson.

### C. First Amendment Free Exercise Claims

With regard to plaintiff's First Amendment free exercise claim, for plaintiff to state such a claim, he must first establish that his right to practice his religion was burdened in a significant way. *See Hernandez v. Comm'n of Internal Revenue*, 490 U.S. 680, 699 (1989) (plaintiff must show a "substantial burden" on a "central religious belief or practice" to prevail under the Free Exercise Clause); *see also Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 760 (7th Cir.2003) (collecting cases). Then he must show that the burden was intentional and not reasonably related to a legitimate penological purpose. *Turner v. Safley,* 482 U.S. 78, 89 (1987) (prison officials may not intentionally and substantially interfere with a prisoner's ability to practice his faith unless the restriction is reasonably related to a "legitimate penological interest"). Plaintiff, however, has failed to sufficiently allege either of these elements. He does not assert any facts showing that because of defendants' seizure and destruction of his religious book he was unable to practice his religion. Further, plaintiff does not allege that the seizure and destruction of his religious book was done with the intent to interfere with his religious practice. In fact, plaintiff states that the seizure was incidental

to his alleged act of making hooch. Thus plaintiff may not proceed on his First Amendment free exercise claim.

### D. Retaliation Claims

Turning to plaintiff's claims of retaliation, to state such a claim for which a prison official can be liable, plaintiff must allege that the prison official took an action in retaliation for his exercising his constitutional rights. *Wilkie v. Robbins*, 551 U.S. 537, 555 (2007) (citing *Rankin v. McPherson*, 483 U.S. 378 (1987) (the Government may not retaliate for exercising First Amendment speech rights); *Lefkowitz v. Turley*, 414 U.S. 70 (1973) (the government may not retaliate for exercising Fifth Amendment privilege against self-incrimination); *United States v. Jackson*, 390 U.S. 570 (1968) (the Government may not retaliate for exercising Sixth Amendment right to trial by jury)). Here, plaintiff asserts that defendants Price and Wolf wrote him a conduct report in retaliation for his exercise of his Fifth Amendment right against self-incrimination. However, retaliation under the First Amendment and retaliation under the Fifth Amendment are two separate claims. *Id.*

**1. First Amendment retaliation claims.**

With regard to First Amendment retaliation claims, inmates have a right under the First Amendment to refuse a prison official's request to provide *false* testimony. *See Wilcher v. Raemisch*, No. 12-cv-803-jdp, 2014 WL 3509395, at *6 (W.D. Wis. July 15, 2014). Thus actions taken in retaliation of an inmate's exercise of this right would be a constitutional violation. *Id.*; *see also Bridges v. Gilbert*, 557 F.3d 541, 556 (7th Cir.2009); *see Babcock v. White*, 102 F.3d 267, 275 (7th Cir.1996).

Here, plaintiff refused Price and Wolf's demands to make a purportedly false statement that he was making hooch. In response, plaintiff asserts that defendants

9

retaliated by writing him a conduct report. Thus plaintiff may proceed on his First Amendment retaliation claim against Price and Wolf.

    **2. Fifth Amendment retaliation claims**

Under the Fifth Amendment, a person has a constitutional right "against being involuntarily called as a witness against himself in a criminal prosecution" and "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers *might* incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973) (emphasis added). To claim the privilege, a person must be "confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *United States v. Doe*, 465 U.S. 605, 614, n. 13 (1984) (quoting *Marchetti v. United States*, 390 U.S. 39, 53 (1968)). The Fifth Amendment privileges, however, are not self-executing, unless the Government has a "substantial reason to believe that the requested disclosures are likely to be incriminating." *Roberts v. United States*, 445 U.S. 552, 559 (1980)

Under Wisconsin state law, selling, or possessing with the intent to sell, intoxicating liquor without a license is a crime punishable by a fine or imprisonment. Wis. Stat. § 125.66(1). I do not presume that actual criminal charges against plaintiff would have been filed. However, I recognize that the act of selling hooch without a license or permit is a criminal offense for which plaintiff could be charged.

Further plaintiff's allegations can be construed to suggest his invocation of the Fifth Amendment. Repeatedly, Price and Wolf asked plaintiff to incriminate himself by admitting to making hooch. Plaintiff alleges that at every turn he declined to admit the allegation. Although plaintiff did not explicitly proclaim that he was not admitting the allegation pursuant to his Fifth Amendment rights, he was clearly not participating in an

informal investigation "where the answers might incriminate him in future criminal proceedings." *Lefkowitz*, 414 U.S. at 77. Therefore, plaintiff may proceed on his Fifth Amendment retaliation claim against Price and Wolf.

### E. State-law Claims

Plaintiff has alleged various "tort" claims. However, the only tort claims which are recognized under Wisconsin state-law are plaintiff's destruction of property claim (Wis. Stat. §§ 893.51(1) and 893.52(1)) and his negligence claim (Wis. Stat. § 895.045(1)). Section 1367(a) states that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [their] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. §1367(a). Because I am allowing plaintiff to proceed on his Fourteenth Amendment due process claims, his First Amendment retaliation claims, and his Fifth Amendment retaliation claims, I will exercise my supplemental jurisdiction over plaintiff's state law claims against Wolf, Price, and Larson.

## CONCLUSION

**IT IS THEREFORE ORDERED** that plaintiff's motion for leave to proceed without prepayment of the filing fee (*in forma pauperis*) (Docket No. 2) is **GRANTED**.

**IT IS ALSO ORDERD** that defendants Warden William Pollard and Secretary Edward Wall are **DISMISSED**.

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being electronically sent today to the Wisconsin

Department of Justice for service on the state Institutional Correctional Officer Wolf, Sergeant Price, and Lieutenant Larson.

**IT IS ALSO ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, defendants Institutional Correctional Officer Wolf, Sergeant Price, and Lieutenant Larson shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the agency having custody of plaintiff shall collect from his institution trust account the $343.07 balance of the filing fee by collecting monthly payments from plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If plaintiff is transferred to another institution, county, state, or federal, the transferring institution shall forward a copy of this Order along with plaintiff's remaining balance to the receiving institution.

**IT IS ALSO ORDERED** that a copy of this order be sent to the officer in charge of the agency where plaintiff is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that, under the Prisoner E-Filing Program, plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-

mail documents to the Court.[2] If plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

>   Office of the Clerk
>   United States District Court
>   Eastern District of Wisconsin
>   362 United States Courthouse
>   517 E. Wisconsin Avenue
>   Milwaukee, Wisconsin 53202

The court further advises plaintiff that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 19th day of March, 2018.

>   s/Lynn Adelman
>   LYNN ADELMAN
>   U.S. District Judge

---

[2] The Prisoner E-Filing Program is mandatory for all prisoners of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.